IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

REGINA STAPLE                              :          CIVIL ACTION
                                           :
         v.                                :
                                           :
LM GENERAL INSURANCE                       :
COMPANY D/B/A AND/OR                       :
A/K/A LIBERTY MUTUAL                       :          NO.  24-3935

**MEMORANDUM**

**Padova, J.**                                                    **November 25, 2024**

In this action, Plaintiff Regina Staple brings Pennsylvania common law breach of contract

and statutory bad faith claims against her insurer, Defendant LM General Insurance Company.

Defendant has moved to dismiss Plaintiff's bad faith claim, as well as some of her requests for

damages, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon

which relief can be granted.  For the reasons that follow, we grant the Motion as to the bad faith

claim without prejudice, and we further grant the Motion by agreement as to the specified damage

requests.

I.      **BACKGROUND**

The Complaint alleges the following facts.  On the morning of May 6, 2022, Plaintiff was

driving east on Chester Pike near its intersection with Ridley Avenue in Sharon Hill, Pennsylvania.

(Compl. ¶ 6.)  While Plaintiff was stopped at a red light, a car driven by Jose Oyola suddenly rear-

ended her.  (Id. ¶ 7.)  Oyola caused the accident by driving too fast, not maintaining his vehicle,

and failing to drive with due care.  (Id. ¶ 29.)  As a result of the accident, Plaintiff sustained serious

and permanent injuries to her head, neck, back, and hip, including spinal strain/sprain, a concussion

with post-concussive syndrome, acute post-traumatic headache, traumatic brain injury with loss of

consciousness, memory dysfunction, abdominal wall injury, hip bursitis, and nerve damage.  (Id.

¶¶ 10, 34.)  These injuries caused Plaintiff pain, discomfort, mobility issues, and mental anguish, hindering her everyday duties and activities.  (Id. ¶¶ 35-36, 42.)  Plaintiff was also forced to incur substantial medical expenses, as well as a loss of earnings and impairment of her earning capacity.  (Id. ¶¶ 37-38, 40-41.)

At the time of the accident, Plaintiff maintained a motor vehicle insurance policy issued by Defendant, which included underinsured motorist coverage for which Plaintiff paid an additional premium.  (Id. ¶¶ 11-12.)  Following the accident, Plaintiff presented a claim to Oyola's insurance carrier and received a settlement offer of $15,000, the limit of Oyola's policy.  (Id. ¶¶ 14-16.)  This amount did not, however, compensate Plaintiff for the full extent of her injuries and damages.  (Id. ¶¶ 17, 32.)  Thus, after obtaining Defendant's consent to accept the $15,000 offer from Oyola's carrier, Plaintiff made a demand for underinsured motorist benefits from Defendant in the amount of her policy limit of $50,000.  (Id. ¶¶ 18-21.)  At the time that Plaintiff made her demand on November 26, 2023, she also supplied Defendant with all of her excess medical bills and records.  (Id. ¶ 22.)  Defendant did not respond to Plaintiff's demand until February 27, 2024, three months after Plaintiff made her demand, when it requested additional information.  (Id. ¶ 23.)  Despite numerous calls from Plaintiff, Defendant did not make an offer of settlement for another four months, finally offering $4,200 on June 26, 2024.  (Id. ¶ 24.)  At the time, Defendant stated that its offer was based on Plaintiff's lost wages and medical expenses, which included physical therapy but not injections or EMGs, as well as evidence of preexisting spinal degeneration and a prior MRI.  (Id. Ex. C.)  Plaintiff reiterated her demand for the $50,000 policy limit, but Defendant only increased its offer to $7,500.  (Id. ¶ 25.)

On July 8, 2024, Plaintiff filed suit against Defendant in the Philadelphia County Court of Common Pleas.  Plaintiff's Complaint contains three Counts, though Counts I and II both appear

to allege elements of a single breach of contract claim.  The third Count, also labeled Count II, is

a bad faith claim pursuant to 42 Pa. Cons. Stat. Ann. § 8371.  On August 7, 2024, Defendant

removed the action to this Court on the basis of diversity jurisdiction, filing the instant Motion to

Dismiss one week later.  Defendant seeks dismissal of the bad faith claim, as well as Plaintiff's

requests for punitive damages, costs of suit, and attorney's fees in connection with her breach of

contract claim, and her request for compensatory damages in connection with her bad faith claim.

Plaintiff agrees to the dismissal of such damage requests but opposes dismissal of her bad faith

claim.[1]

## II.     LEGAL STANDARD

When deciding a motion to dismiss pursuant to Rule 12(b)(6), we "consider only the

complaint, exhibits attached to the complaint, [and] matters of public record, as well as

undisputedly authentic documents if the complainant's claims are based upon these documents."

Alpizar-Fallas v. Favero, 908 F.3d 910, 914 (3d Cir. 2018) (quoting Mayer v. Belichick, 605 F.3d

223, 230 (3d Cir. 2010)).  We "accept as true all plausible factual allegations made in the complaint

and draw all reasonable inferences in the plaintiff's favor."  In re Asbestos Prod. Liab. Litig. (No.

VI), 822 F.3d 125, 133 (3d Cir. 2016) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555

(2007); Williams v. BASF Catalysts LLC, 765 F.3d 306, 323 (3d Cir. 2014)).  However, we "need

not 'accept as true a legal conclusion couched as a factual allegation.'"  Host Int'l, Inc. v.

Marketplace PHL, LLC, 32 F.4th 242, 248 (3d Cir. 2022) (quoting Papasan v. Allain, 478 U.S.

265, 286 (1986)) (citation omitted).

---

[1] Defendant argues that these requests should be dismissed because they involve categories of damages that are not available under the respective claims.  Plaintiff agrees.  (See Pl. Resp. at 3.)  We therefore grant Defendant's Motion with respect to the specified damage requests as unopposed and dismiss those requests with prejudice.

A plaintiff's pleading obligation is to set forth "a short and plain statement of the claim," which "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555 (second alteration in original) (first quoting Fed. R. Civ. P. 8(a)(2); then quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). The complaint must allege "'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that the defendant is liable for [the] misconduct alleged.'" Warren Gen. Hosp. v. Amgen Inc., 643 F.3d 77, 84 (3d Cir. 2011) (quoting Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). In the end, we will grant a motion to dismiss pursuant to Rule 12(b)(6) if the factual allegations in the complaint are not sufficient "to raise a right to relief above the speculative level." Geness v. Admin. Off. of Pa. Cts., 974 F.3d 263, 269 (3d Cir. 2020) (quoting Twombly, 550 U.S. at 555).

## III.    DISCUSSION

Defendant contends that the Complaint fails to state a claim for bad faith under Pennsylvania law. The Pennsylvania insurance bad faith statute provides as follows:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
> (2) Award punitive damages against the insurer.
> (3) Assess court costs and attorney fees against the insurer.

42 Pa. Cons. Stat. Ann. § 8371. A party bringing a bad faith claim under § 8371 "must establish: '(1) that the insurer did not have a reasonable basis for denying benefits under the policy and (2) that the insurer knew or recklessly disregarded its lack of a reasonable basis in denying the claim.'"

4

Reid *ex rel.* Lopez v. Selective Ins. Co., Civ. A. No. 20-1260, 2020 WL 3265148, at *1 (E.D. Pa. June 17, 2020) (quoting Rancosky v. Washington Nat'l Ins. Co., 170 A.3d 364, 377 (Pa. 2017)). Moreover, "[a]ctionable bad faith encompasses behavior beyond the denial of a claim without a reasonable basis, including an insurer's investigation of a claim." Gold v. State Farm Fire & Cas. Co., 880 F. Supp. 2d 587, 597 (E.D. Pa. 2012); see also Hollock v. Erie Ins. Exch., 842 A.2d 409, 415 (Pa. Super. Ct. 2004) (en banc) ("[A]n action for bad faith may also extend to the insurer's investigative practices[.]" (quoting O'Donnell *ex rel* Mitro v. Allstate Ins. Co., 734 A.2d 901, 906 (Pa. Super. Ct. 1999))). Thus, an insurer is required to "properly investigate claims prior to refusing to pay the proceeds of the policy to its insured." Gold, 880 F. Supp. 2d at 597 (quoting Bombar v. W. Am. Ins. Co., 932 A.2d 78, 92 (Pa. Super. Ct. 2007)). Additionally, while bad faith "encompasses a wide variety of objectionable conduct," it requires more than "mere negligence or bad judgment." Id. at 600 n.11 (quotations omitted).

When asserting a bad faith claim, "[a] plaintiff must plead specific facts as evidence of bad faith and cannot rely on conclusory statements." Toner v. GEICO Ins. Co., 262 F. Supp. 3d 200, 208 (E.D. Pa. 2017) (citations omitted). The "plaintiff cannot merely say that an insurer acted unfairly, but instead must describe with specificity what was unfair." Id. (citation omitted). "'[B]are-bones' conclusory allegations . . . do not state a plausible bad faith claim." Atiyeh v. Nat'l Fire Ins. Co. of Hartford, 742 F. Supp. 2d 591, 600 (E.D. Pa. 2010) (citing Fowler, 578 F.3d at 210).

Here, Defendant argues that the Complaint contains only conclusory allegations with respect to Plaintiff's bad faith claim. We conclude, however, that there are some well-pleaded allegations pertinent to this claim. Plaintiff contends that Defendant acted in bad faith by failing to objectively, fairly, and timely review and respond to her demand, and by failing to make a

reasonable settlement offer.  In support of these claims, the Complaint alleges that Defendant did

not respond to Plaintiff's claim for three months, at which time it responded only with a request

for additional information.  (Compl. ¶ 23, Ex. B.)  It further alleges that, despite numerous inquiries

from Plaintiff, Defendant took another four months, for a total of seven months from Plaintiff's

initial demand, to make a settlement offer.  (Id. ¶ 24, Ex. C.)  The Complaint also alleges that

Defendant initially offered only $4,200 to settle Plaintiff's claim, later increasing its offer to

$7,500, still substantially less than Plaintiff's $50,000 demand.  (Id. ¶¶ 21, 24-25, Exs. C-D.)  Thus,

we must decide whether these allegations about the timing of Defendant's response and the amount

of its offers of settlement, accepted as true, are sufficient to show that Plaintiff's bad faith claim is

"facially plausible."  Warren Gen. Hosp., 643 F.3d at 84 (quotation omitted).

A. Delay

Plaintiff argues that the Complaint alleges a facially plausible bad faith claim based on

Defendant's delayed response to her claim.  An insurer's delay in responding to an insured's

demand is not dispositive of bad faith, but it can be a "relevant factor."  Williams v. Hartford Cas.

Ins. Co., 83 F. Supp. 2d 567, 572 (E.D. Pa. 2000), aff'd, 261 F.3d 495 (3d Cir. 2001) (citing

Kosierowski v. Allstate Ins. Co., 51 F. Supp. 2d 583, 588 (E.D. Pa. 1999), aff'd, 234 F.3d 1265

(3d Cir. 2000)).  Whether delay is probative of bad faith depends on "whether the delay is

attributable to the defendant, whether the defendant had no reasonable basis for the actions it

undertook which resulted in the delay, and whether the defendant knew or recklessly disregarded

the fact that it had no reasonable basis to deny payment."  Borden v. NGM Ins. Co., 660 F. Supp.

3d 322, 330 (E.D. Pa. 2023) (quotation omitted).  Delaying settlement when the value of the claim

is clear often constitutes bad faith, whereas delays in evaluating a claim of uncertain value, without

more, do not.  Id. (citing Williams, 83 F. Supp. 2d at 572).  "The primary consideration is 'the

6

degree to which a defendant insurer *knew* it had no basis to deny the claimant: if delay is attributable to the need to investigate further or even to simple negligence, no bad faith has occurred.'" Williams, 83 F. Supp. 2d at 572 (quoting Kosierowski, 51 F. Supp. 2d at 588) (citing Quaciari v. Allstate Ins. Co., 998 F. Supp. 578, 582-83 (E.D. Pa. 1998)).

Here, the Complaint alleges that it took three months for Defendant to respond to Plaintiff's demand with a request for more information and four additional months for Defendant to make its first settlement offer.  (See Compl. ¶¶ 22-24, Exs. B-C.)  However, the mere fact that a delay occurred does not show that Defendant acted in bad faith.  See Williams, 83 F. Supp. 2d at 572 (citing Kosierowski, 51 F. Supp. 2d at 588).  Similarly, the length of the delay in this case is not so excessive as to suggest bad faith in and of itself.  "In [bad faith] cases premised on insurer delay and failure to communicate, courts have generally only inferred plausible knowledge or reckless disregard where the time periods of delay were much longer than six months." Young v. State Farm Auto. Ins. Co., 614 F. Supp. 3d 153, 157-58 (E.D. Pa. 2022) (discussing cases concluding that delays of one year and fifteen months, respectively, did not constitute bad faith).  Thus, the allegations as to the fact and length of the delay do not alone suffice to state a claim for bad faith.

Moreover, the Complaint does not allege other facts that would show that the delay in this case constituted bad faith.  While it does attribute the delay to Defendant's "neglect[]" and failure to "timely review[] the Plaintiff's demand" (Compl. ¶ 26), it does not allege facts that would show that Defendant "had no reasonable basis" for its actions or "knew or recklessly disregarded the fact that it had no reasonable basis" to delay payment.  Borden, 660 F. Supp. 3d at 330 (quotation omitted); see also Williams, 83 F. Supp. 2d at 572 (describing "the degree to which a defendant insurer *knew* it had no basis to deny the claimant" as the "primary consideration" with respect to whether delay demonstrates bad faith (quotations and citations omitted)).  Thus, the Complaint

7

alleges neither a delay sufficiently excessive in itself nor additional facts that would support its conclusion that Defendant's actions were untimely or neglectful such that they constituted bad faith.  See Carr v. Travelers Home & Marine Ins. Co., 700 F. Supp. 3d 288, 297 (E.D. Pa. 2023) (explaining that, without factual support, "an allegation that a claim was not timely paid and investigated is a legal conclusion which a court must disregard at a motion to dismiss stage." (quotation omitted)).  Accordingly, we conclude that the Complaint fails to state a bad faith claim based on delay.

   B. Unreasonable Offers

   Plaintiff also argues that the Complaint plausibly alleges bad faith based on Defendant's unreasonably low settlement offers.  The Complaint alleges that, after consenting to the $15,000 settlement offered by the tortfeasor's insurer, Defendant offered only $4,200 initially and then $7,500 to settle Plaintiff's underinsured motorist claim.  (See Compl. ¶¶ 16, 24-25, Exs. C-D.) Plaintiff emphasizes that Defendant's offers were made just one month apart, and that Defendant received no additional information in the interim to justify the increase.

   Arbitrarily low settlement offers may be probative of bad faith when they are not reasonably based on the value of a claim.  See Brown v. Progressive Ins. Co., 860 A.2d 493, 501 (Pa. Super. Ct. 2004) (discussing Hollock, 842 A.2d); Klinger v. State Farm Mut. Auto. Ins. Co., 115 F.3d 230, 235 (3d Cir. 1997) (concluding that finding of bad faith was justified, in part based on insurer's "clearly inadequate offer").  However, "an insurer's low, but reasonable estimate of damages" does not "constitute bad faith."  Nw. Mut. Life Ins. Co. v. Babayan, 430 F.3d 121, 137 n.22 (3d Cir. 2005) (citing Terletsky v. Prudential Prop. & Cas. Ins. Co., 649 A.2d 680, 690 (Pa. Super Ct. 1994); Brown, 860 A.2d at 501); see also Lublin v. Am. Fin. Grp., Inc., 960 F. Supp. 2d 534, 542-43 (E.D. Pa. 2013) ("Defendant's [low] valuation of Plaintiff's injuries and eventual

settlement offer are not prima facie evidence of bad faith."). Similarly, "negotiating by offering a figure at the low end of the settlement range does not necessarily constitute bad faith, particularly when the valuation of the injuries and damages of a claim is difficult." Williams, 83 F. Supp. 2d at 576 (citing Kosierowski, 51 F. Supp. 2d at 592). Thus, to be probative of bad faith, an insurer's settlement offer must be not only low, but unreasonably so given an objective valuation of the claim.

The Complaint alleges that, in addition to the $15,000 settlement from the tortfeasor's insurer, Plaintiff demanded her policy limit of $50,000 and Defendant offered far less— $4,200 initially and later $7,500. (Compl. ¶¶ 16, 21, 25.) This demonstrates only that Plaintiff and Defendant disagreed as to the value of the claim, not that Defendant's offer was unreasonable. See Smith v. State Farm Mut. Auto. Ins. Co., 506 F. App'x 133, 137 (3d Cir. 2012) ("[D]isagreement over the amount of the settlement of [an underinsured motorist] claim . . . is not unusual . . . . However, the failure to immediately accede to a demand for the policy limit cannot, without more, amount to bad faith." (citing Johnson v. Progressive Ins. Co., 987 A.2d 781, 785 (Pa. Super. Ct. 2009))). The Complaint does allege that Plaintiff's injuries were serious. In extending its initial offer, Defendant stated that it had evaluated Plaintiff's injuries, treatment, and lost wages, but had also considered evidence that Plaintiff had received "PT but no injections or EMGs" and that there was "degeneration in her spine" and "a prior MRI." (Compl. Ex. C.) Even if Defendant's assessment was wrong, that alone establishes "at most 'mere negligence or bad judgment,' but 'not bad faith.'" Aponte v. LM Gen. Ins. Co., Civ. A. No. 24-2357, 2024 WL 3511406, at *3 (E.D. Pa. July 23, 2024) (quoting Grossi v. Travelers Personal Ins. Co., 79 A.3d 1141, 1149 (Pa. Super. Ct. 2013)); see also Kosierowski, 51 F. Supp. 2d at 592 (noting that the Pennsylvania Superior Court has "explicitly recognized the subjective, uncertain nature of [uninsured motorist] claims" (citing

Terletsky, 649 A.2d at 689)).  There are no allegations that would establish that Defendant knew

or recklessly disregarded that its offers were unreasonable, or even what an objective valuation of

Plaintiff's claim might be.  Thus, we cannot conclude that the Complaint has plausibly alleged bad

faith based on the amount of Defendant's settlement offers.  Even taken together, allegations of a

delay that was not inherently unreasonable and an offer that was less than Plaintiff demanded,

without more, do not state a claim for bad faith.  Cf. Carr, 700 F. Supp. 3d at 296 (dismissing bad

faith claim where the "allegations essentially amount[ed] to frustration that [the insurer] provided

settlement offers that were lower than [Plaintiff] desired, responded more slowly and less

frequently than she would have liked, and relied on its own experts").

## IV.    CONCLUSION

For the foregoing reasons, we conclude that the Complaint fails to state a claim for bad

faith pursuant to § 8371.  Accordingly, we grant the Motion to Dismiss with respect to that claim.

We also grant the Motion as unopposed with respect to Plaintiff's requests for punitive damages,

costs of suit, and attorney's fees in connection with her breach of contract claim, as well as

Plaintiff's request for compensatory damages in connection with her bad faith claim.

Plaintiff asks that we grant her leave to amend her bad faith claim if we dismiss that claim.

Federal Rule of Civil Procedure 15(a) provides that "[t]he Court should freely give leave [to

amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  While "'prejudice to the nonmoving

party is the touchstone for denial of an amendment,' denial may also be 'based on bad faith or

dilatory motives, truly undue or unexplained delay, repeated failures to cure the deficiency by

amendments previously allowed, or futility of amendment.'"  Chestnut v. Finck, 722 F. App'x

115, 118 (3d Cir. 2018) (quoting Lorenz v. CSX Corp., 1 F.3d 1406, 1414 (3d Cir. 1993)).  Since

this case is in its earliest stage and the parties have not yet conducted any discovery, we perceive

no prejudice to Defendant from allowing Plaintiff to amend her claim. Moreover, there is no indication that Plaintiff has acted in bad faith, has acted with dilatory motive, has unduly delayed litigation, or has repeatedly failed to cure the deficiencies in her bad faith claim by amendment. Furthermore, it does not appear that amendment would be futile. We therefore grant Plaintiff leave to amend her bad faith claim.

BY THE COURT:

/s/ John R. Padova, J.

_____

John R. Padova, J.